# 14-360-cr

## In the United States Court of Appeals
## for the Second Circuit

United States of America,

Appellee,

v.

John Smith, AKA Kazoo, Ricky Allen, Terrance Hall, AKA
Bam, Johnnie Gibson, AKA Goldie, Willia Szymanski,
Emanuel E. Bell Jeffery Achatz, Dale Lockwood, Anthony
Burley, Frank Owens, Van Miller,

Defendants.

Dewey Taylor, AKA Road Rash,

Defendant-Appellant.

On Appeal from the United States District Court
For the Western District of New York

**BRIEF FOR APPELLEE
UNITED STATES OF AMERICA**

WILLIAM J. HOCHUL, JR.
United States Attorney
*Attorney for Appellee*
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5837

JOSEPH J. KARASZEWSKI
Assistant United States Attorney
*of Counsel*

# TABLE OF CONTENTS

Page No.

Table of Authorities ...................................................................... i

Statement of Jurisdiction ............................................................ 1

Statement of Issues Presented ................................................... 1

Combined Statement of the Case and
Facts Relevant to this Appeal ...................................................... 2

Summary of Argument.................................................................. 7

Argument...................................................................................... 8

    I.      The Jury's Verdict on Count 1 was not A Constructive
           Amendment of the Indictment ......................................... 8

          A.   Governing Law and Standard of Review........................... 8
          B.   Discussion....................................................................... 10

    II.     The Jury's Guilty Verdicts on the Structuring Counts
           were Supported by Sufficient Evidence ........................... 12

          A.   Governing Law and Standard of Review......................... 12
          B.   Discussion....................................................................... 14

Conclusion.................................................................................. 18

Certificate of Compliance ............................................Unnumbered

Affidavit of Service......................................................Unnumbered

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Jackson v. Virginia*, 443 U.S. 307 (1979) ........................................................ 13

*Johnson v. United States*, 520 U.S. 461 (1997) ................................................9, 10

*United States v. Agrawal*, 726 F.3d 235 (2d Cir. 2013) ...................................... 9

*United States v. Anderson*, 474 F.3d 51 (2d Cir. 2014)...................................... 13

*United States v. Bastian*, 770 F.3d 212 (2d Cir. 2014) ....................................... 9

*United States v. Berrios,* 279 Fed. Appx. 82 (2d Cir. 2008) .............................. 10

*United States v. Cuti*, 720 F.3d 453 (2d Cir. 2013)........................................... 13

*United States v. D'Amelio*, 683 F.3d 412 (2d Cir. 2012) ..................................... 9

*United States v. Espaillet*, 380 F.3d 713 (2d Cir. 2004).................................... 13

*United States v. Evans*, 293 Fed. Appx. 63 (2008)........................................... 10

*United States v. Huezo*, 546 F.3d 174 (2d Cir. 2008) ....................................... 13

*United States v. Jackson*, 335 F.3d 170 (2d Cir. 2003) ..................................... 14

*United States v. Kozeny*, 667 F.3d 122 (2d Cir. 2011) ...................................... 13

*United States v. Martinez*, 430 F.3d 317 (6th Cir. 2005) .................................. 10

*United States v. McPherson*, 424 F.3d 183 (2d Cir. 2005) ................................ 14

*United States v. Mollica*, 849 F.3d 723 (2d Cir. 1988) ....................................... 9

*United States v. Mucciante*, 21 F.3d 1228 (2d Cir. 1994) ................................... 8

*United States v. Olano*, 507 U.S. 725 (1993).................................................... 10

i

*United States v. Patino*, 962 F.2d 263 (2d Cir. 1992)............................................ 9

*United States v. Payne*, 591 F.3d 46 (2d Cir. 2010) ........................................... 12

*United States v. Rigas*, 490 F.3d 208 (2d Cir. 2007) ............................................ 8

*United States v. Vargas-Cordon*, 733 F.3d 366 (2d Cir. 2013) ........................... 13

*United States v. Zangari*, 677 F.3d 86 (2d Cir. 2012)......................................... 10

## FEDERAL STATUTES

18 U.S.C. § 3231 ................................................................................................. 1

21 U.S.C. § 841(b)(1)(A)............................................................................... 10, 12

21 U.S.C. § 846 ............................................................................................... 2, 11

28 U.S.C. § 1291 ................................................................................................. 1

31 U.S.C. § 5313(a) ........................................................................................... 14

31 U.S.C. § 5324 ............................................................................................... 14

31 U.S.C. § 5324(a)(1) ........................................................................................ 2

31 U.S.C. § 5324(a)(3) ........................................................................................ 2

## FEDERAL RULES

Fed. R. App. P. 4(b)(2) ....................................................................................... 1

## STATEMENT OF JURISDICTION

The district court [Arcara, J.] had subject matter jurisdiction pursuant to 18 U.S.C. § 3231, by virtue of an Indictment charging Defendant-Appellant Dewey Taylor with crimes proscribed by Titles 21 and 31 of the United States Code. (A[1] 20-22). A jury found Taylor guilty of Counts 1 through 8 of the Indictment. The district court sentenced Taylor principally to an aggregate term of imprisonment of 144 months, and the Judgment in a Criminal Case, a final judgment that disposes of all parties' claims, was entered on February 4, 2014. (A 19; 128-33). Taylor timely filed a notice of appeal on February 4, 2014.[2] (A 19). This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES PRESENTED

1.     Count 1 of the Indictment charged Taylor with conspiring to possess with intent to distribute 5 kilograms or more of cocaine. The jury found Taylor guilty of the conspiracy, with a special finding that his conduct

---

[1]     References to "A" are to pages of the Appendix filed by Taylor with his brief. References to "Docket Item No. ___" are to pages of docket item numbers assigned to transcripts which were filed in the district court. In the table appearing on page 6 of this brief, "DIN 313" refers to Docket Item No. 313 on the district court docket.

[2]     Taylor actually filed his Notice of Appeal on January 28, 2014, before the entry of the judgment. Pursuant to Fed. R. App. P. 4(b)(2), it is treated as filed on the day of and after the entry of the judgment.

1

involved only 500 grams or more of cocaine. Was this verdict the result of a material constructive amendment of the Indictment requiring reversal?

2.     Was the jury's guilty verdict on seven counts of structuring a financial transaction to evade a reporting requirement supported by sufficient evidence?

### COMBINED STATEMENT OF THE CASE AND FACTS RELEVANT TO THIS APPEAL

Taylor stood trial with co-defendants William Szymanski, Dale Lockwood, Anthony Burley, and Van Miller. All defendants were charged in Count 1 with a conspiracy to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846. (A 20-21). Taylor alone was charged in Counts 2 through 8 with structuring and assisting in structuring currency deposits with the Erie Metro Federal Credit Union for the purpose of evading currency reporting requirements, in violation of 31 U.S.C. §§ 5324(a)(1) and 5324(a)(3). (A 21-22). The jury found Taylor guilty on all counts. As to Count 1, it made a special finding that the amount of cocaine involved in the offense was 500 grams or more. (A-127; Docket Item No. 237, pp. 2, 7-13).  Szymanski, Burley, and Miller were acquitted. (*Id.,* pp. 3, 5, 6). The jury was unable to reach a unanimous verdict as to Lockwood. (*Id.,* p. 4).

2

**The Drug Conspiracy**

Taylor does not challenge the sufficiency of the evidence as to his conviction on Count 1. Accordingly, the facts are summarized here, in the light most favorable to the government.

Taylor was a member of the "Afro Dogs," a national motorcycle and social club which had a chapter in Buffalo, New York. (Docket Item No. 193, pp. 4-5; 9-10). At various times, Taylor, John Smith and Ricky Allen held leadership positions in the club. (*Id.*, pp. 4-6; Docket Item No. 330, p. 43). In addition to being members of the same social club, however, these men also were associated with each other in dealing drugs.

Beginning in approximately August 2009, Smith began packaging and storing cocaine in Allen's house, with Allen's consent. (*Id.*, pp. 14-19; 28-29). Smith also brought cash to Allen's house, ranging in quantities from approximately $40,000 to over $100,000. Allen at times helped Smith count money and Allen let Smith store money at his house. (*Id.*, pp. 22-23). This occurred regularly until approximately November 2010. (*Id.*, pp. 37-38).

Smith also had other people working for him, including Taylor. (*Id.*, pp. 49-50). On at least one occasion, Taylor delivered a package to Allen's house on Smith's behalf, which contained a kilogram of cocaine and some crack

cocaine. Taylor went into Allen's basement and put the kilogram of cocaine there for storage. Allen thereafter delivered the crack to Smith's house. (*Id.*, pp. 23-26; Docket Item No. 195, pp. 29-30). Two or three times, Taylor helped Smith count drug money in Allen's kitchen. (*Id.,* pp. 43-44).

As relevant to Taylor's appellate argument, the district court instructed the jury as follows concerning its responsibilities as to drug quantity for Count 1:

> If you find that the Government has proven beyond a reasonable doubt the two elements that I have just described [concerning the drug conspiracy], then there is one more issue that you must decide. I will provide you with a special verdict form asking you to fill in the type and amount of drugs that the defendants conspired to possess with intent to distribute. The burden is on the Government to establish the type and amount of drugs beyond a reasonable doubt.

> Remember, you should address this issue only and complete the form only if you find the first two elements have been established to a particular defendant.

> If you do not find the Government has proven both elements as to that defendant, then do not fully complete this form as to that defendant. (A 106-107).

> * * * * *

> [C]ount one charges the defendant with a conspiracy to distribute and to possess with the intent to distribute five kilograms or more of a mixture or substance containing cocaine. Now, there's a verdict sheet -- the verdict sheet, there's a verdict sheet form which will be given to you and will require you to specify, in the event of a guilty verdict on count one, whether the conspiracy

4

proven involved cocaine. You must then unanimously agree upon which controlled substance or substances were involved in the conspiracy.

You must also determine the weight of the controlled substances involved in the conspiracy. And I'll go over that verdict sheet with you in a few minutes. Specifically, should you determine that the conspiracy charged in count one involved a mixture or substance containing cocaine, you must determine whether the weight of that mixture or substance was five kilograms or more, or if it was 500 grams or more, or if it was less than 500 grams. (A 114-15).

**The Structuring Charges**

Taylor was the owner of D.T. Liquor, a liquor store located in the City of Buffalo. (Docket Item No. 313, p.133; Docket Item No. 332, pp.152-54). D.T. Liquor maintained a business checking account at Erie Metro Federal Credit Union, and Taylor had a personal bank account there. (Docket Item No. 313, p.34). Tellers at the credit union had an ongoing relationship with Taylor, as he was a frequent visitor. (*Id.*, pp. 65; 76). It was procedure at the credit union for tellers to advise customers that the credit union was obligated to file currency transaction reports when a customer was engaging in a transaction which would trigger the obligation. (*Id.*, pp. 67-68; 99). There were occasions on which currency transaction reports were filed with respect to cash transactions for the D.T. Liquor account. (*Id.*, p.104).

5

On the following dates, cash deposits were made into accounts at the credit union over which Taylor had control:

| DATE | CASH DEPOSITS | ACCOUNT(S) | RECORD REFERENCES |
|------|---------------|------------|-------------------|
| 03/04/2008 | $10,000<br>$ 2,050 | D.T. Liquor<br>D.T. Liquor | A 23;<br>DIN 313, pp. 38-39 |
| 03/07/2008 | $ 6,300<br>$ 4,000 | D.T. Liquor<br>Dewey A. Taylor | A 25;<br>DIN 313, pp. 40-42 |
| 05/09/2008 | $ 9,100<br>$ 2,000 | D.T. Liquor<br>Dewey A. Taylor | A 28-29;<br>DIN 313, pp. 43-45 |
| 06/24/2008 | $ 9,500<br>$　655 | D.T. Liquor<br>Dewey A. Taylor | A 32-33;<br>DIN 313, pp. 45-48 |
| 09/15/2008 | $ 9,800<br>$ 1,000 | D.T. Liquor<br>Dewey A. Taylor | A 37-38;<br>DIN 313, pp. 48-50 |
| 10/27/2008 | $ 9,700<br>$ 1,000 | D.T. Liquor<br>Dewey A. Taylor | A 41-42;<br>DIN 313, pp. 50-51 |
| 11/03/2009 | $ 3,200<br>$ 4,000<br>$ 3,000 | Dewey A. Taylor<br>Dewey A. Taylor<br>Dewey A. Taylor | A 45-46;<br>DIN 313, pp. 52-53 |

**The Verdict and Sentence**

The jury found Taylor guilty of all eight counts against him. (Docket Item No. 237, pp. 2; 7-14). As to Count 1, the jury fixed the quantity of cocaine at 500 grams or more. (*Id.*, p. 2).

The district court sentenced Taylor to an aggregate term of imprisonment of 144 months, consisting of concurrent terms of 144 months on Count 1, and 60 months each on Counts 2 through 8. (A 128-33). This appeal

followed, in which Taylor challenges his convictions but not his sentence, which he is currently serving.

## SUMMARY OF ARGUMENT

Taylor has made no argument on this appeal which provides a basis to overturn his convictions. As to his claim that his conviction on Count 1 for a lesser-included offense constitutes a constructive amendment of the Indictment requiring reversal, this Court has rejected that argument in summary orders rendered in cases which are factually and legally indistinguishable. This case presents no basis for this Court to abandon those decisions and to rule differently.

Taylor's claim that the evidence was insufficient to support the jury's verdicts on the structuring counts is likewise unavailing. Taylor's claim boils down to an invitation for this Court to substitute its judgment for that of the jury. Although the evidence may have supported competing inferences consistent with innocence, sufficient evidence was adduced to support the jury's reasonable inference that Taylor knowingly structured his cash deposits to evade the reporting requirement. To reject the jury's conclusion would be to usurp its role. Accordingly, this Court should affirm the judgment of conviction in all respects.

7

# ARGUMENT

## I. The Jury's Verdict on Count 1 Was Not A Constructive Amendment of the Indictment

## A. Governing Law and Standard of Review

A defendant may be tried and convicted only on those charges contained in an indictment returned by a grand jury, and only a grand jury may lawfully amend an indictment. *United States v. Mucciante*, 21 F.3d 1228, 1233 (2d Cir. 1994). "An indictment has been constructively amended when the trial evidence or the jury charge operates to broaden the possible bases for conviction from that which appeared in the indictment." *United States v. Rigas*, 490 F.3d 208, 225 (2d Cir. 2007) (internal quotation marks and alterations omitted). "To prevail on a constructive amendment claim, a defendant must demonstrate that 'the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify *essential elements* of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment.'" *United States v. D'Amelio*, 683 F.3d 412, 416 (2d Cir. 2012), *quoting United States v. Mollica*, 849 F.3d 723, 729 (2d Cir. 1988) (emphasis added in *D'Amelio*). This Court has viewed a constructive amendment as a *per*

8

*se* violation of the Fifth Amendment's Grand Jury Clause requiring reversal, but it "has proceeded cautiously in identifying such error," *United States v. Agrawal,* 726 F.3d 235, 260 (2d Cir. 2013), and has "consistently permitted significant flexibility in proof, provided that the defendant was given notice of the core of criminality to be proven at trial." *United States v. Patino*, 962 F.2d 263, 266 (2d Cir. 1992). *See also D'Amelio,* 683 F.3d at 417.

This Court reviews *de novo* a claim of constructive amendment which was raised in the district court. *D'Amelio,* 683 F.3d at 416. However, an unpreserved claim that the indictment was constructively amended is reviewed only for plain error. *United States v. Bastian,* 770 F.3d 212, 219 (2d Cir. 2014). "[B]efore an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affect[s] substantial rights." *Johnson v. United States*, 520 U.S. 461, 466-67 (1997) quoting *United States v. Olano*, 507 U.S. 725, 732 (1993). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson*, 520 U.S. at 467, quoting *Olano*, 507 U.S. at 732 (internal quotation marks omitted). Generally, this Court should exercise its

discretion to correct a plain error only if failure to do so would result in a "miscarriage of justice." *United States v. Zangari*, 677 F.3d 86, 96 (2d Cir. 2012).

A constructive amendment has not occurred where the indictment charges a controlled substance offense involving a quantity specified in 21 U.S.C. § 841(b)(1)(A), and the trial jury returns a guilty verdict specifying the lesser quantity alleged in 21 U.S.C. § 841(b)(1)(B). Under such circumstances, the defendant has been convicted of a lesser-included offense. *United States v. Martinez*, 430 F.3d 317, 340 (6th Cir. 2005). *See also United States v. Berrios,* 279 Fed. Appx. 82, 85 (2d Cir. 2008); *United States v. Evans*, 293 Fed. Appx. 63, 68 (2008).

## B. Discussion

Taylor did not raise his constructive amendment claim before the district court; thus, this Court may review it only for plain error. Under any standard of review, however, Taylor cannot establish that his conviction on Count 1 was for a crime for which the grand jury did not indict him. Taylor appears to acknowledge that the crime for which the jury convicted him, conspiring to possess with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B), is a lesser included offense of the offense which the Indictment specifically charged, conspiring to possess with intent to

10

distribute 5 kilograms or more of cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). (*See* Taylor's Brief, at 13-14). Thus, the jury's verdict is expressly contemplated by Rule 31(c)(1) of the Federal Rules of Criminal Procedure, which states that "[a] defendant may be found guilty of . . . an offense necessarily included in the offense charged." Taylor argues instead that his conviction is infirm because "the jury here was not instructed on the lesser-included offense." (Taylor's Brief, at 14). However, the record contradicts this claim.

By utilizing a special verdict form which separated the issue of conspiratorial liability from quantity, the district court expressly gave the jury the option of finding Taylor guilty of a conspiracy involving five kilograms or more of cocaine, 500 grams or more, or less than 500 grams. (Docket Item No. 237, p.2). This Court has endorsed this approach, albeit in unpublished summary orders. In *Evans*, 293 Fed. Appx. at 68, this Court stated that the "practical effect" of this method of instructing the jury is "not to eliminate an element, but to permit the jury to convict [the defendant] of the lesser included offenses" contained in 21 U.S.C. §§ 841(b)(1)(B) and 841(b)(1)(C). Likewise, in *Berrios*, 279 Fed. Appx. at 85, this Court, applying a plain error standard, rejected the defendants' constructive amendment claim under procedural

11

circumstances which are identical to those in this case. Thus, this case is indistinguishable from *Evans* and *Berrios,* and there is no reason for this Court to rule differently, particularly in light of this Court's directive that "'[d]enying summary orders precedential effect does not mean that the court considers itself free to rule differently in similar cases.'" *United States v. Payne*, 591 F.3d 46, 58 (2d Cir. 2010) *quoting* Order dated June 26, 2007, adopting 2d Cir. Local R. 32.1).

Accordingly, there is no basis to disturb Taylor's conviction on Count 1, and this Court should affirm it.

## II. The Jury's Guilty Verdicts On the Structuring Counts Were Supported By Sufficient Evidence

### A. Governing Law and Standard of Review

"A defendant challenging the sufficiency of the evidence bears a heavy burden, because the reviewing court is required to draw all permissible inferences in favor of the government and resolve all issues of credibility in favor of the jury verdict." *United States v. Kozeny*, 667 F.3d 122, 139 (2d Cir. 2011). Although this Court reviews such challenges *de novo*, a "judgment of acquittal can be entered 'only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt.'" *United States v. Cuti*, 720 F.3d 453, 461 (2d

12

Cir. 2013), quoting *United States v. Espaillet*, 380 F.3d 713, 718 (2d Cir. 2004). Thus, a jury verdict must be affirmed if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Vargas-Cordon*, 733 F.3d 366, 375 (2d Cir. 2013) *quoting Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

In assessing a sufficiency challenge, this Court must "consider the evidence presented 'in its totality, not in isolation.'" *United States v. Anderson*, 474 F.3d 51, 59 (2d Cir. 2014), quoting *United States v. Huezo*, 546 F.3d 174, 178 (2d Cir. 2008). This is a "stern standard," pursuant to which a court "may not 'usurp[ ] the role of the jury.'" *United States v. McPherson*, 424 F.3d 183, 187 (2d Cir. 2005), quoting *United States v. Jackson,* 335 F.3d 170, 180 (2d Cir. 2003).

A financial institution is required to file a currency transaction report with the Secretary of the Treasury when it is involved in a cash transaction which exceeds $10,000. 31 U.S.C. § 5313(a); *McPherson*, 424 F.3d at 188. Title 31, United States Code, Section 5324 prohibits individuals from structuring cash transactions to evade this reporting requirement. Section 5324(a) states, in relevant part:

> No person shall, for the purpose of evading the reporting requirements of section 5313(a) or 5325 or any regulation prescribed under any such section . . .

13

(1)     cause or attempt to cause a domestic financial institution to fail to file a report required under section 5313(a) or 5325 or any regulation prescribed under any such section, to file a report or to maintain a record required by an order issued under section 5326, or to maintain a record required pursuant to [the relevant regulations] . . . or

(3)     structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions.

There are three elements to the crime of structuring a currency transaction in violation of 31 U.S.C. § 5324. The evidence must show that: (1) the defendant engaged in the structuring of a currency transaction; (2) the defendant knew that the financial institution involved was legally obligated to report currency transactions in excess of $10,000; and (3) the defendant acted with the intent to evade the reporting requirement. *McPherson*, 424 F.3d at 189.

## B. Discussion

Taylor focuses on the first and third elements in arguing that the evidence was insufficient to support his structuring convictions.[3] In doing so, he spends considerable time reviewing the facts which supported the convictions in *MacPherson* and argues that those facts were "more compelling"

---

[3] As to the second element, he concedes that "the jury may have been able to reasonably infer that Taylor was aware of the CTR requirement on individual deposits exceeding $10,000, since he had in fact participated in many such deposits in which . . . a CTR had been filed." (Taylor's Brief, at 16-17).

than those which were presented at his trial. (Taylor's Brief, at 19-20). However, this comparison is not helpful, as *MacPherson* did not establish a minimum quantum of evidence necessary to support a structuring conviction. Put another way, the evidence which supports Taylor's convictions cannot be deemed insufficient simply because other cases exist in which the evidence may have been stronger.

Taylor is correct that no witness provided direct evidence that he personally made the deposits in question (*see* Taylor's Brief, at 16). However, the evidence easily supports the inference that he did. Taylor had control over the two accounts into which the relevant deposits were made. In fact, one account, which figured into six of the seven transactions, was a personal account in his name alone, to which the jury could infer he had sole access. As to the business account, the CEO of the credit union testified that he was personally acquainted with Taylor, that Taylor owned D.T. Liquor and frequently transacted business at the credit union on its behalf, and that the tellers had an "ongoing relationship" with Taylor. (Docket Item No. 313, pp. 33-34, 65; 76). Further, with one exception, the jury was able to view and compare the nearly identical signatures which the depositor affixed on the

15

deposit slips, including the signature on the slips documenting deposits into Taylor's personal account.[4]

Further, the evidence at trial supports the jury's reasonable inference that Taylor structured the deposits to keep each of them below the threshold triggering the reporting requirement. Five of the seven transactions involve cash deposits into the D.T. Liquor account precisely at $10,000 (A 23), or very close to it ($9,100 (A 28), $9,550 (A 32), $9,800 (A 37), and $9,700 (A 41)). Each of these deposits was followed by another deposit, once into the business account and four times into Taylor's personal account, which brought the aggregate amount of each transaction over $10,000. The second deposit in these five transactions was made seconds or, at most, minutes after the first. (Docket Item No. 313, pp. 39; 45; 47; 49-50; 51).

The two remaining transactions, on March 7, 2008 and November 3, 2009, involve deposits which are split into amounts which are not as close to the $10,000 threshold ($6,300/$4,000 on March 7, 2008, and $3,200/$4,000/$3,000 on November 3, 2009). However, given the totality of

---

[4] The lone exception is the deposit slip for the series of deposits into Taylor's personal account on June 24, 2008, on which the notation "Walked away" appears on the signature line. (A 33). However, even on that occasion, the slip documenting the contemporaneous deposit into the business account bears a signature which the jury could reasonably have concluded was indistinguishable from all the others. (A 32).

16

the circumstances, it was not unreasonable for the jury to have concluded that these two transactions, each just slightly over $10,000 in the aggregate, also were structured by Taylor to evade the currency reporting requirement.

Taylor argues that "the only reasonable inference" the jury could have drawn from the evidence was that "the seven pairs of transactions . . . were anomalies." (Taylor's Brief, at 17). This argument, however, misapprehends the role of the jury and would require this Court to substitute its judgment for the jury's. Although Taylor's proffered conclusion is on the spectrum of those which the properly instructed jury could have drawn, the jury simply chose not to do so. In denying Taylor's post-verdict motion for acquittal, the district court acknowledged that Taylor was "a liquor store owner who routinely engaged in . . . cash transactions that might have explained the seven sets of two or more cash deposit transactions aggregating more than $10,000." (Docket Item No. 252, at 8). However, the district court accurately observed that "it is the task of the jury, not the court, to choose among competing inferences that can be drawn from the evidence." *Id.* (citation omitted). Taylor has presented this Court with no basis to reach a different conclusion.

Accordingly, the jury's verdicts on Counts 2 through 8 were supported by sufficient evidence and should be affirmed.

17

## CONCLUSION

Based on the foregoing, this Court should affirm the district court's judgment.


Dated: February 25, 2015, Buffalo, New York.

Respectfully submitted,

WILLIAM J. HOCHUL, JR.
UNITED STATES ATTORNEY
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202


By:      *s/Joseph J. Karaszewski*
JOSEPH J. KARASZEWSKI
Assistant United States Attorney
*Of counsel*

18

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA,

               Appellee,                CA # 14-360-cr

    -v-

DEWEY TAYLOR, AKA ROAD RASH,

               Defendant-Appellant.

_____

    I, JOSEPH J. KARASZEWSKI, Assistant United States Attorney for the Western District of New York, hereby certify that the foregoing brief complies with the 14,000 word limitation permitted by the court in that the brief is calculated by the word processing program to contain approximately 4,808 words, exclusive of the Table of Contents, Table of Authorities and Addendum of Statutes and Rules.

                                     *s/Joseph J. Karaszewski*
                                       JOSEPH J. KARASZEWSKI
                                     Assistant U.S. Attorney

# AFFIDAVIT OF SERVICE

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA,

               Appellee,            CA # 14-360-cr

    -v-

DEWEY TAYLOR, AKA ROAD RASH,

               Defendant-Appellant.

_____

STATE OF NEW YORK    )
COUNTY OF ERIE       )  ss:
CITY OF BUFFALO     )

      The undersigned hereby certifies that she is an employee of the United States Attorney's Office for the Western District of New York and is a person of such age and discretion as to be competent to serve papers.

      That on February 25, 2015, she mailed the attached **Brief** for Appellee, United States of America, by placing an original and five copies in an envelope addressed to the United States Court of Appeals for the Second Circuit and one copy to Appellant, at the place and address stated below, and by entrusting said envelope and contents to the United States Postal Service.

    Addressee:   United States Court of Appeals    (1 original and 5 copies)
                   Second Circuit
                   Attn: Catherine O'Hagan-Wolfe
                   Clerk of the Court
                   40 Foley Square
                   New York, New York 10007

                   Lawrence Gerzog, Esq.       (1 copy, regular mail)
                   233 Broadway, Suite 2707
                   New York, New York 10279

Further, pursuant to 2d Cir. Local Rule 25.1 (effective January 20, 2010), that on February 25, 2015, she electronically filed the attached **Brief** for Appellee, United States of America, which had been found to be virus free using Trend Micro, with the Second Circuit Court of Appeals using its CM/ECF which would then electronically notify the parties listed below.

LAWRENCE GERZOG

*s/Laura Rogers*
LAURA ROGERS
Legal Assistant

Sworn to before me this
25th day of February, 2015

*s/Monica J. Richards*
**MONICA J. RICHARDS**
Notary Public, State of New York
Qualified in Erie County
My Commission Expires 11-25-2018